IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ROSSABI LAW PLCC,                          )
                                           )
                Plaintiff,                 )
                                           )
        v.                                 )        1:21-CV-413
                                           )
EVERYTHING ICE, INC.;                      )
EVERYTHING ICE PROPERTIES,                 )
LLC; JOHN SHAW BURLEY; 11G-EI              )
LLC; ADDISON ICE LLC; ROBERT               )
P. LEKAI; LEON A. LEKAI; and THE           )
11 GROUP LLC,                              )
                                           )
                Defendants.                )

**MEMORANDUM OPINION AND ORDER**

Catherine C. Eagles, District Judge.

In this declaratory judgment action, the plaintiff, a law firm, asks for a judicial declaration as to which of two warring factions controls its corporate client. Because the law firm does not have standing to seek resolution of contractual disputes between other entities and persons, and in the alternative because the Court in its discretion declines to exercise jurisdiction in this situation, the motion to dismiss filed by some of the defendants will be granted.

I.      **Overview**

In 2019, Amiel Rossabi and Rossabi Law PLLC began providing legal services to defendant Everything Ice, Inc (EI). In 2020, Leon Lekai, John Shaw Burley, and other defendants entered into a contract, called in the papers the Comprehensive Agreement. Among other things, the contract set forth the ownership interest and voting rights that

each defendant had in EI and Everything Ice, Properties, Inc. (EIP). In early 2021, Mr. Burley and Leon Lekai began disagreeing about operations of businesses under the Comprehensive Agreement. In May 2021, Leon Lekai and Mr. Burley gave the law firm contrary directives about the course of action to take on behalf of EI.

On May 26, 2021, the law firm filed the operative complaint seeking a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, and asking the Court to declare the defendants' rights and obligations under the Comprehensive Agreement. Doc. 5. The law firm seeks a declaratory judgment that clarifies the rights and obligations of the defendants under the Comprehensive Agreement in order to clarify the law firm's rights and obligations as corporate counsel for EI. Specifically, the law firm asks the court to declare 1) who is in control of EI, 2) who is in control of EIP, 3) who is authorized to operate the businesses owned by EI and/or EIP, 4) whether the Comprehensive Agreement is a valid and enforceable agreement, 5) the status of the Magic Ice Deal and the obligations of the defendants related to the Magic Ice Deal, 6) whether there is a binding arbitration agreement between the defendants, 7) what lawyer or lawyers represent EI and/or EIP, 8) the law firm's obligations, responsibilities, and duties to defendants, and 9) to whom should the law firm send bills for work it has performed and continues to perform and who is authorized to pay such bills. *Id.* at ¶ 39.

Mr. Burley, EI, and EIP (Burley Defendants) move to dismiss, contending that the law firm does not have standing to obtain the desired declaratory judgment. They point out that the law firm is not a party to or third-party beneficiary of the Comprehensive Agreement and contend that the law firm has no legal rights at issue and has not suffered

2

an injury-in-fact. The law firm opposes the motion, asserting that it has raised substantial questions about its rights and obligations to EI.

## II.    Facts According to the Complaint

The Burley Defendants make a facial challenge to subject matter jurisdiction. *See* Doc. 19 at 11; Doc. 43 at 4. In this situation, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009); *see also Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).[1]

In June 2020, each of the defendants—EI, EIP, Mr. Burley, 11G-EI LLC, Addison Ice LLC, Robert Lekai, and Leon Lekai—entered into a "Comprehensive Agreement" intended to merge the businesses of Mr. Burley and Leon Lekai. Doc. 5 at ¶¶ 16, 18; *see* Doc. 5-1. Among other things, the Comprehensive Agreement set forth voting rights and ownership interests in EI and EIP among the defendants. Doc. 5 at ¶ 37; Doc. 5-1. As of July 2020, all parties to the agreement operated as though the Comprehensive Agreement bound them and governed their business relationships. Doc. 5 at ¶ 20.

The plaintiff law firm is not a party to the Comprehensive Agreement and did not draft the agreement. *Id.* at ¶¶ 16–17. The law firm began providing legal services to EI

---

[1] In their briefing, the parties refer to factual developments after the complaint was filed. But "[w]hether a plaintiff has standing is determined by considering the relevant facts as they existed at the time the action was commenced." *Republic Bank & Trust Co. v. Kucan*, 245 F. App'x 308, 310 (4th Cir. 2007) (unpublished) (per curiam); *see Friends of the Earth, Inc. v. Laidlaw Env. Servs., Inc.*, 528 U.S. 167, 180 (2000); *accord Focus on the Fam. v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1275 (11th Cir. 2003) (collecting cases). In any event, the result would not be different if those facts were considered.

3

in 2019 and was representing EI when it filed this suit. *Id.* at ¶ 15. Mr. Rossabi, the law firm's managing member, *id.* at ¶ 2, had represented defendants Addison Ice, LLC and Leon Lekai for over ten years before the law firm began representing EI. *Id.* at ¶ 14.

In early 2021, Mr. Burley and Leon Lekai began disagreeing about operations of businesses affected by the Comprehensive Agreement. *Id.* at ¶ 21. The divide deepened in May 2021, while the law firm was assisting EI in negotiations to purchase an entity, Magic Ice USA, Inc., and its assets. *Id.* at ¶ 28; Doc. 5-4 at 2–4. Leon Lekai believed EI's board had unanimously authorized the purchase of Magic Ice USA, Inc., but Mr. Burley disagreed. Doc. 5-4 at 7. Via a May 14, 2021, email, Mr. Burley told Leon Lekai that the "business relationship that was envisioned in the Comprehensive Agreement" was "not acceptable or workable." Doc. 5 at ¶ 27. The next day, Mr. Burley caused Robert Lekai to be "locked out of EI emails and all other EI business." *Id.* at ¶ 29.

On May 16, 2021, Mr. Rossabi, Mr. Burley, and Leon Lekai exchanged emails discussing Mr. Burley's desire to "unwind" his business relationship with Leon Lekai and his businesses. *Id.* at ¶ 30. In the emails, Mr. Rossabi and Mr. Burley discussed whether Mr. Rossabi had a conflict of interest in representing EI in light of the dispute between Mr. Burley and Leon Lekai. Doc. 5-5 at 3–5. Mr. Burley also told Mr. Rossabi that EI would pay any of the law firm's outstanding legal bills. *Id.* at 3.

On May 20, 2021, Mr. Burley sent a letter to Leon Lekai and Robert Lekai in which he notified them that EI had terminated their "contractual consultant engagement." Doc. 5 at ¶ 31; Doc. 5-6 at 3. In the letter, Mr. Burley stated that Leon Lekai and Robert Lekai were "no longer authorized to act on behalf of [EI] in any capacity." Doc. 5-6 at 3.

The same day, Fred Shrayber, Mr. Burley's personal attorney, sent Mr. Rossabi an email in which he directed the law firm to take no further action on behalf of EI unless authorized by Mr. Burley. Doc. 5 at ¶ 32; Doc. 5-7 at 5. Mr. Shrayber also wrote that the law firm continued to represent EI as corporate counsel and thus should cease all communications with Robert Lekai and Leon Lekai. Doc. 5-7 at 4.

On May 21, 2021, Leon Lekai emailed Mr. Burley, two lawyers at the law firm, and others, "call[ing] on" the law firm as corporate counsel to sue "any party violating the [Comprehensive Agreement] for attempted self-dealing" and to investigate transactions approved by Mr. Burley without board approval. Doc. 5-9 at 4; Doc. 5 at ¶ 34. In the email, Leon Lekai stated that Mr. Burley "lack[ed] the authority for any and all the actions [he had] undertaken" under the Comprehensive Agreement. Doc. 5-9 at 4.

Litigation ensued. Mr. Burley sought a writ in Pennsylvania state court against some of the defendants here, *see* Doc. 19-3, and the law firm filed this lawsuit. Doc. 1.

## III. Analysis

A motion to dismiss under Rule 12(b)(1) for lack of standing tests subject matter jurisdiction, which is the court's "statutory or constitutional power to adjudicate the case." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (emphasis omitted). When a defendant files a Rule 12(b)(1) motion to dismiss challenging subject matter jurisdiction, the plaintiff has the burden of establishing jurisdiction. *See Demetres v. E. W. Constr., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015).

"Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016); *see generally* U.S.

Const. art. III, § 2. "For there to be a case or controversy under Article III, the plaintiff must have a personal stake in the case—in other words, standing." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (cleaned up).[2] To satisfy the standing requirement, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338.

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "[A] plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Burke v. City of Charleston*, 139 F.3d 401, 405 (4th Cir. 1998) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)).

Here, the law firm has no personal stake or legally protected interest in the dispute between and among the defendants over the terms and application of the Comprehensive Agreement. Nor has it shown any invasion of its interests that is imminent and non-speculative.

---

[2] The parties appear to disagree as to whether North Carolina or Pennsylvania law will apply to the underlying contractual dispute. The Court need not resolve this dispute, since whether a party has standing to maintain an action in federal court is a question of federal, not state law. *Phillips Petrol. Co. v. Shutts*, 472 U.S. 797, 804 (1985) (holding that "[s]tanding to sue in any Article III court is, of course, a federal question which does not depend on the party's prior standing in state court"); *White v. National Union Fire Ins. Co.*, 913 F.2d 165, 167 (4th Cir.1990) (holding "[f]ederal standards guide the inquiry as to the propriety of declaratory relief in federal courts, even when the case is under the court's diversity jurisdiction"). The parties have not identified any material difference in the law in the two states relevant to standing.

The complaint is clear that the law firm is not a party to the Comprehensive Agreement, Doc. 5 at ¶ 16, and it does not allege, directly or indirectly, that the law firm is a third-party beneficiary of the Comprehensive Agreement. *See, e.g.*, *Carrasquillo v. Kelly*, No. 17-4887, 2018 WL 1806871, at *4 (E.D. Pa. Apr. 17, 2018) (holding an injured non-party to an insurance contract lacked standing to seek declaratory judgment that the insurer had a duty to defend and indemnify the insured); *Eaton Vance Mgmt. v. ForstmannLeff Assocs.*, No. 06-CV-1510(WHP), 2006 WL 2331009, at *6–7 (S.D.N.Y. Aug. 11, 2006) (holding that a party without standing to enforce an agreement also lacks standing to seek a declaration of rights under the agreement, and collecting cases); *Sun Commodities, Inc. v. C.H. Robinson Worldwide, Inc.*, No. 11-62738-CIV, 2012 WL 602616, at *2 (S.D. Fla. Feb. 23, 2012) (same); *Mission Essential Pers., LLC v. Worldwide Language Res., Inc.*, No. 5:12-CV-294-D, 2013 WL 5442212, at *2 (E.D.N.C. Sept. 27, 2013) (noting general rule and an exception).[3] The law firm has no "legally protected interest" in continuing to represent a client. It has not alleged that it has a contract with EI to provide legal services on anything other than an at-will basis, nor has it alleged that EI breached any contract with the law firm.

---

[3] Consistent with these general rules, both Pennsylvania and North Carolina require that in order for a third-party to have standing to enforce a contract, it must be an intended third-party beneficiary of the contract. *See, e.g.*, *Guy v. Liederbach*, 501 Pa. 47, 60–61, 459 A.2d 744, 751–52 (1983); *Holshouser v. Shaner Hotel Grp. Props. One Ltd.*, 134 N.C. App. 391, 400, 518 S.E.2d 17, 24–25 (1999), *aff'd*, 351 N.C. 330, 524 S.E.2d 568 (2000). North Carolina courts have been clear that declaratory judgments about contractual obligations are generally not available to non-parties. *See Smith v. USAA Cas. Ins. Co.*, 261 N.C. App. 40, 47–48, 819 S.E.2d 610, 615 (2018) (collecting cases); *Beachcomber Props., L.L.C. v. Station One, Inc.*, 169 N.C. App. 820, 824, 611 S.E.2d 191, 194 (2005) (holding a potential condominium purchaser, whose purchase contract was terminated, did not have standing to maintain a declaratory judgment action against the condominium's homeowner's association).

Uncertainties over whom to bill for legal services, its professional and ethical obligations, and from whom to take instructions are not concrete. They raise only speculative and hypothetical injuries. *See Beck v. McDonald*, 848 F.3d 262, 266–67 (4th Cir. 2017) (holding alleged speculative harms were not sufficient to confer standing). If and when EI fails to pay an outstanding bill when it is due and owing, for example, the law firm can sue for breach of contract, and it does not need to know whether Leon Lekai or Mr. Burley is in charge in order to recover its fees from the corporation.

The complaint does allege that the law firm's obligations as corporate counsel for EI are affected by the dispute between Leon Lekai and Mr. Burley and by the defendants' rights and obligations set forth in their Comprehensive Agreement. But the law firm has not focused its request for a declaratory judgment on any contract it has with EI; the gravamen of its request is on an interpretation of another contract entirely. The law firm has cited no case or other legal authority to support its contention that its questions about which defendants control its corporate client create the sort of "personal stake" that confers standing. Likewise, the law firm has cited no case in which a federal court has been required to give ethical advice in a declaratory judgment action, and to the extent it has questions or concerns over its ongoing ethical duties, it can seek such guidance from the State Bar or withdraw as corporate counsel for EI.

Even if the law firm's ethical and professional concerns rise to the level of an injury in fact, the Court declines, in its discretion, to wade into what is essentially a dispute between those with ownership interests in a corporation at the invitation of someone with no ownership interest at all. *See Wilton v. Seven Falls Co.*, 515 U.S. 277,

8

282 (1995) (noting that courts have discretion to decline to issue declaratory judgments in appropriate situations).  Given the very limited nature of the law firm's concerns and the significantly broader disputes between and among the defendants, a declaratory judgment action by a marginally-interested third-party is an inefficient and imprecise way to resolve the underlying conflicts over the Comprehensive Agreement.

There is "nothing automatic or obligatory about the assumption of jurisdiction by a federal court to hear a declaratory judgment action," and "considerations of practicality and wise judicial administration" are important.  *Wilton*, 515 U.S. at 288 (cleaned up); *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996) (noting that a district court should hear a declaratory judgment action "when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue").  Those considerations here favor dismissal without prejudice, in favor of litigation between and among the parties with the real interests at stake.

## IV.    Conclusion

The plaintiff law firm filed this suit seeking a declaratory judgment declaring the defendants' rights and obligations under a contract to which it is neither a party nor an intended beneficiary.  It has not alleged facts showing it has a legally protected interest at stake or showing injury-in-fact, instead alleging only speculative and hypothetical harm.  For these reasons, the law firm lacks standing and the Burley Defendants' motion to dismiss will be granted.  In the alternative, the Court declines in its discretion to exercise jurisdiction over this dispute, given the law firm's tangential interests in what is essentially an intra-corporate dispute between and among others.

9

The Lekai Defendants have filed some crossclaims, Doc. 45, which the Burley Defendants have moved to dismiss. Doc. 47. Those cross-claims and that motion remain pending. *See* 6 Arthur R. Miller, Mary Kay Kayne, & Benjamin Spencer, *Federal Practice and Procedure* § 1433 (3d ed. Oct. 2020) ("[T]he dismissal of the original suit or of a counterclaim therein for lack of subject matter jurisdiction will require the court also to dismiss the crossclaim, unless that claim is supported by an independent basis for federal jurisdiction."); *see also Travelers Prop. Cas. Co. of America v. M.B. Kahn Constr. Co.*, No. 3:20-CV-01304-SAL, 2021 WL 1177861, at *28 (D.S.C. Mar. 29, 2021). Other motions remain pending as well, Docs. 20, 36, and will be resolved in due course, and judgment will be entered when appropriate.

It is **ORDERED** that the motion to dismiss filed by defendants Everything Ice, Inc., Everything Ice Properties, LLC and John Shaw Burley, Doc. 18, is **GRANTED** and the complaint will be **DISMISSED** without prejudice for lack of standing.

This the 10th day of January, 2022.

_____

UNITED STATES DISTRICT JUDGE